# UNITED STATES DISTRICT COURT

for the

Western District of Virginia

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

**JAN 2 7 2020**

JULIA C. DUDLEY, CLERK

BY: _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| | ) |
| (1) Black Samsung Cellular Telephone | ) |
| | ) |

Case No. 1:20-mj-00007

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Western_____ District of _____Virginia_____ *(identify the person or describe property to be searched and give its location):* (1) black Samsung cellular telephone located at the Smyth County Sheriff's Office, Marion, VA. Attachment A consists of a photograph of the black Samsung cellular telephone to be searched.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____21_____ U.S.C. § _846/841(a)(1)_ , and the application is based on these
facts:  See Attachment C          and/or     841(a)(1)

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Snedeker, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/27/20

_____
*Judge's signature*

City and state:     Abingdon, Virginia

Pamela Meade Sargent, USMJ
*Printed name and title*

# ATTACHMENT A



The Device
(Black Samsung cell phone seized from Person A on 01-22-2020)

## ATTACHMENT B

1. All records and information on the Device described/photo displayed in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) and/or 846/841(a)(1), including but not limited to:

   a. photographs and other digital images

   b. types, amounts, and prices of methamphetamine purchased and/or distributed, as well as dates, places, and amounts of specific transactions;

   c. any information related to methamphetamine sources, customers, and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

   d. communications (e.g. text messages, chat/messenger communications, email messages) with customers, sources of supply, and co-conspirators regarding methamphetamine and related proceeds;

   e. any information recording schedule or travel;

   f. all financial record/account information.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of Internet sites used to communicate with methamphetamine customers, sources of supply, and co-conspirators, and procure methamphetamine distribution related paraphernalia (e.g. digital scales, distribution baggies), all in furtherance of a violation of 21 USC 841(a)(1) and/or 846/841(a)(1) including:

   a. records of Internet Protocol addresses used;

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1. I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

2. The purpose of this application and affidavit is to secure a search warrant for the black Samsung cellular telephone (hereafter referred to as the "Device") seized by law enforcement from an individual (hereafter referred to as "Person A") during the course of a traffic stop and Person A's arrest on 01-22-2020. This affiant, after obtaining and reviewing information and evidence, and participating in a criminal investigation involving Person A and others, believes there is evidence of distribution of methamphetamine and/or conspiracy to distribute methamphetamine in violation of 21USC 841(a)(1) and 846/841(a)(1) contained within the data and images of the Device.

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (28) years. During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors.  I have participated in the investigations and subsequent arrests of hundreds of individuals involved with the trafficking of methamphetamine (a Schedule II Controlled Substance).  I have also executed hundreds of search warrants related to the trafficking and manufacturing of methamphetamine.

4. The facts set forth in this affidavit are known to me as a result of my personal participation in the investigation of Person A and information provided to me by other law enforcement officers.  Any reference to the gender of any unnamed person within this affidavit does not necessarily reflect the true gender of said person.

5. On 01-22-2020, Person A and her associates were stopped by local law enforcement for a motor vehicle violation within the Western District of Virginia.  During the course of the traffic stop, a police narcotics K-9 unit responded to the scene.  While this affiant and another officer were escorting Person A away from the subject vehicle in preparation for the narcotics dog to walk around said vehicle, this affiant and the other officer observed digital scales (narcotics distribution paraphernalia) and a small, plastic, Ziploc-type bag (of the type consistent with both narcotics use and distribution) in plain view when Person A's unzipped jacket swung open and exposed an interior pocket.  This affiant removed the digital scales and Ziploc-type bag from Person A's pocket and noticed that the Ziploc-type bag contained residue (suspected ice methamphetamine residue).  A chemical field test was performed at the scene on

the residue inside the Ziploc-type bag with positive results for methamphetamine. The narcotics dog also alerted on the vehicle. A search of the vehicle did not result in the discovery of additional controlled substances. Person A was arrested at the scene and charged (state) with possession of methamphetamine. The Device (Person A's cellular telephone) along with the aforementioned digital scales and Ziploc-type bag were seized. Person A was transported to the office of a local law enforcement agency where she was processed in relation to her arrest. During the aforementioned processing, law enforcement discovered approximately (½) ounce of suspected ice methamphetamine (a quantity sufficient for and consistent with distribution/redistribution) hidden in a small zippered compartment of Person A's jacket. After having been Mirandized, Person A agreed to speak with law enforcement. Person A expressed fear of the person from whom Person A obtained the approximately (½) ounce of ice methamphetamine and would not divulge the name of her source.

6. Individuals involved with the distribution of methamphetamine and/or conspiracy to distribute methamphetamine routinely utilize cellular telephones for communication with customers, sources of supply, and other co-conspirators. Said communications include verbal contact/attempted verbal contact (evidenced by call log data stored in cellular telephones) and text messaging. Contact lists stored within the cellular telephones often identify customers, sources of supply, and co-conspirators by name and/or nickname. Cellular telephones seized from individuals illicitly involved with controlled substances routinely have images of controlled substances and other persons that are also illicitly involved with controlled substances. Cellular telephones also have other functions/capabilities (as described below) that can be utilized by drug traffickers/manufacturers and co-conspirators in furtherance of their illicit activities.

## TECHNICAL TERMS

7. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Cellular telephone: A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global

positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8. Based on my training, experience, and research, I know that most cellular telephones have capabilities that allow them to serve as a cellular telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

9. Based on my knowledge, training, and experience, I know that electronic devices, such as the Device, can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices. This information can sometimes be recovered with forensics tools.

10. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

      a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a
storage medium that are necessary to draw an accurate conclusion is a
dynamic process. Electronic evidence is not always data that can be merely
reviewed by a review team and passed along to investigators. Whether data
stored on a computer is evidence may depend on other information stored on
the computer and the application of knowledge about how a computer
behaves. Therefore, contextual information necessary to understand other
evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its
use, who used it, and when, sometimes it is necessary to establish that a
particular thing is not present on a storage medium.

11. *Nature of examination.* Based on the foregoing, and consistent with Rule
    41(e)(2)(B), the warrant I am applying for would permit the examination of the
    Device consistent with the warrant. The examination may require authorities to
    employ techniques, including but not limited to computer-assisted scans of the entire
    medium, that might expose many parts of the Device to human inspection in order to
    determine whether it is evidence described by the warrant.

12. *Manner of execution.* Because this warrant seeks only permission to examine a
    device already in law enforcement's possession, the execution of this warrant does
    not involve the physical intrusion onto a premises. Consequently, I submit there is
    reasonable cause for the Court to authorize execution of the warrant at any time in
    the day or night.

13. Based upon the facts set forth above, I believe there is probable cause for the
    issuance of a search warrant for the Device seized by law enforcement from
    Person A on 01-22-2020 and currently stored at a local law enforcement agency
    located within the Western District of Virginia, as there is probable cause to believe
    that there is evidence of a violation of 21 USC 841(a)(1) and 846/841(a)(1) stored
    within the Device.


_____         01-27-2020
Brian Snedeker, Special Agent (DEA)       Date


Subscribed and sworn to before me, this the  27th  day of  January, 2020
in Abingdon, Virginia.

_____
Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia

Seen by:


_____/s/ Roy F. Evans_____          01-27-2020
        Roy F. Evans, SAUSA